**PPG INDUSTRIES, INC., Plaintiff,**

v.

**UNITED STATES, Defendant,**

**and**

**Vitro Flex, S.A. and Cristales Inastillables de Mexico, S.A., Defendants–Intervenors.**

**Court No. 86–12–01546.**

United States Court of International Trade.

July 3, 1991.

determination of the United States International Trade Administration, United States Department of Commerce ("ITA" or "Commerce") in *Results of Reconsideration of Issues Pursuant to Court Remand of PPG Industries, Inc. v. United States, Court No. 86–12–01546* (Oct. 25, 1990) (*"Remand Results"*), filed pursuant to this Court's order of August 9, 1990. The remand order directed Commerce to recalculate certain countervailable benefits which Commerce determined were bestowed on account of FOMEX[1] export loans in its *Fabricated Automotive Glass from Mexico; Final Results of Countervailing Duty Administrative Review ("Final Results"),* 51 Fed.Reg. 44,652 (Dec. 11, 1986). Plaintiff seeks a new remand. Defendant opposes the motion and cross-moves for judgment sustaining the determination of Commerce in the *Final Results,* as supplemented by the results of the prior remands. Defendant–Intervenors join defendant's opposition to the motion of plaintiff and seek its dismissal.

Stewart and Stewart, Terence P. Stewart and David Scott Nance, on the motion, Washington, D.C., for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, U.S. Dept. of Justice, Civil Div., Commercial Litigation Branch, Velta A. Melnbrencis, and Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce (Diane McDevitt, Atty.–Advisor, of counsel, on the motion), Washington, D.C., for defendant.

Brownstein, Ziedman and Schomer, Irwin P. Altschuler, David R. Amerine and Claudia G. Pasche, on the motion, Washington, D.C., for defendants-intervenors.

## MEMORANDUM OPINION AND ORDER

CARMAN, Acting Chief Judge:

Plaintiff moves pursuant to Rules 1 and 7(f) of this Court to reject the remand

## BACKGROUND

In *PPG Industries, Inc. v. United States,* 14 CIT ——, 746 F.Supp. 119 (1990), this case was remanded to the ITA with instructions to (1) determine an effective benchmark interest rate for comparison with the 1984 FOMEX export loans and recalculate the subsidy amount, if necessary; (2) reexamine the 1985 benchmark interest rate to ascertain which finance charges, if any, were included in the quarterly weighted-average interest rates Commerce relied upon in calculating its 1985 benchmark rate; and (3) determine whether or not the Federal Reserve effective rates that Commerce used in constructing the 1985 benchmark rate accounted for compensating balances and recalculate the subsidy amount, if necessary. The final determination of Commerce was affirmed by this Court in all other respects.

---

1. FOMEX (Fund for the Promotion of Exports of Mexican Manufactured Products) is a trust established by the Government of Mexico to promote the manufacture and sale of exported products.

## DISCUSSION

### Standard of Review

■ Commerce's determination must be upheld unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Matsushita Elec. Indus. Co. v. United States*, 3 Fed.Cir. (T) 44, 51, 750 F.2d 927, 933 (1984) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). The "substantial evidence" standard used by the Court to determine whether the agency's findings are supported by law contemplates "essentially a limited review of the agency determination, insuring that the agency conclusions are reasonably drawn from some evidence, more than a mere scintilla, in light of the record as a whole." *Alhambra Foundry v. United States*, 9 CIT 632, 635, 626 F.Supp. 402, 407 (1985).

■ As a general rule this Court will accord substantial deference to Commerce's implementation of its statutory mandate. *Zenith Radio Corp. v. United States*, 437 U.S. 443, 450–51, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1978). An agency's interpretation of a statute which it is authorized to administer is "to be sustained unless unreasonable and plainly inconsistent with the statute, and [is] to be held valid unless weighty reasons require otherwise." *ICC Indus. v. United States*, 5 Fed.Cir. (T) 78, 84, 812 F.2d 694, 699 (1987) (quoting *Melamine Chemicals, Inc. v.*

*United States*, 2 Fed.Cir. (T) 57, 60–61, 732 F.2d 924, 928 (1984). To satisfy this standard it is not necessary for a court to find that the "[agency's] construction is the only reasonable one, or even that it is the result [the Court] would have reached had the question arisen in the first instance in judicial proceedings." *Unemployment Compensation Comm'n v. Aragon*, 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136 (1946); *see Consumer Prod. Div., SCM Corp. v. Silver Reed America, Inc.*, 3 Fed. Cir. (T) 83, 90, 753 F.2d 1033, 1039 (1985).

### 1. Commerce's recalculation of the 1984 FOMEX export loan benefits utilizing effective interest rates

■ Commerce agreed with plaintiff's motion for a remand to recalculate the benefits of 1984 FOMEX preferential loans and requested a remand to reexamine the benefit conferred by 1984 FOMEX dollar-denominated export loans. *Remand Results* at 2. In accordance with the remand instructions Commerce recalculated the FOMEX export loan benefit for 1984.[2] This Court finds that Commerce properly recalculated the 1984 FOMEX export loan benefits utilizing the effective interest rates, and that its findings are supported by substantial evidence on the record and are in accordance with law.

### 2. Commerce's determination that the 1985 Federal Reserve interest rates did not include compensating balances and additional fees and costs

■ On remand, Commerce noted that the commercial lending rates published in

---

**2.** On remand, Commerce stated:

[W]e have recalculated the benefit from all of the relevant FOMEX export loans granted in 1984, comparing effective preferential rates with effective benchmark interest rates applicable to this period.

For its effective rate benchmark, the Department used the same benchmark as in the final results before this Court, the weighted-average interest rate derived from the Federal Reserve Bulletin quarterly survey of bank lending rates.

. . . .

In order to compare the effective rate benchmark from the Federal Reserve with the FOMEX preferential dollar rates, we had to de-

rive equivalent effective rates from the nominal FOMEX rates. Since interest on these loans is prepaid and we have no evidence of any charges on these loans other than interest, we calculated the effective FOMEX preferential rates by using the nominal FOMEX rates and taking into account the cost of prepayment of interest. On this basis, we determine the benefit from the two FOMEX export loans granted in 1984 to be 1.03 percent *ad valorem* for all companies, a rate lower than the 1.20 percent *ad valorem* for all companies determined in the final results before this Court.

*Remand Results* at 2–3.

the Federal Reserve Bulletin, which Commerce used in deriving its 1985 benchmark, "represent[ed] effective interest rates and were obtained from a survey of 340 commercial banks of all sizes." *Remand Results* at 4. It concluded, based on this survey, that "these effective rates do not include non-rate costs to the borrower, additional fees or finance charges." *Id.* With respect to compensating balances, Commerce determined that:

> compensating balances are not included in the 1985 Federal Reserve effective rate (citation omitted). Plaintiff has not provided any information to indicate that there are compensating balances for dollar-denominated FOMEX loans in Mexico.
>
> . . . .
>
> Based on the information we have reexamined, we do not believe that a change in our 1985 effective benchmark for FOMEX dollar-denominated export loans is required.

*Id.* With respect to additional charges and fees, the ITA indicated that the information provided by the Division of Monetary Affairs of the Federal Reserve System demonstrated that the quarterly weighted-average Federal Reserve rates used by the ITA to calculate the 1985 effective benchmark did not include the effect of additional charges or fees. *Id.* at 6.

This Court has previously sustained the practice of Commerce of calculating benchmark rates from information obtained from the United States Federal Reserve Board in *Cementos Anahuac del Golfo, S.A. v. United States*, 12 CIT 525, 555, 689 F.Supp. 1191, 1214 (1988), *aff'd*, 879 F.2d 847 (1989), *cert. denied*, — U.S. —, 110 S.Ct. 1318, 108 L.Ed.2d 494 (1990). Although plaintiff does not challenge ITA's use of Federal Reserve Bulletin effective interest rates, it nevertheless contends that in its remand determination the ITA should have included compensating balances and additional fees, finance charges, and other non-rate costs to the borrower in the 1985 benchmark rate. Plaintiff's Motion for Remand on FOMEX Export Loan Issue ("Plaintiff's Motion") at 2–3.

According to plaintiff, the record established that compensating balances were a "common feature" of short-term commercial loans in the United States in 1985 and that compensating balances of as much as twenty percent of the amount of a loan could be required. In support of its argument, plaintiff refers this Court to a report titled *FFO United States* ("FFO Report" or "Report"), a financial journal published in April 1985 by the Business International Corporation. *See* Administrative Record Document ("A.R. Doc.") 59 at frames 726, 812–13. Furthermore, plaintiff asserts that the ITA has "consistently" made adjustments to benchmark interest rates to reflect compensating balance requirements where such requirements occur, citing *Ceramic Tile from Mexico; Final Results of Countervailing Duty; Administrative Review*, 53 Fed.Reg. 15,090, 15,091 (Apr. 27, 1988), and, therefore, the ITA abdicated its duty to investigate by failing to determine whether a similar adjustment was necessary for both its 1984 and 1985 benchmarks. *Plaintiff's Memorandum* at 3.

Defendant maintains that the determination by Commerce not to include adjustments for compensatory balance requirements and additional finance charges was reasonable, in accordance with law, and supported by substantial evidence on the record. Defendant's Memorandum in Opposition to Plaintiff's Motion for Remand on the FOMEX Export Loan Issue ("Defendant's Memorandum") at 3. Defendant points out that the FFO Report, relied on by plaintiff, advised that the compensating balance rule is flexible and depends upon monetary conditions. Furthermore, defendant claims that the twenty percent compensating balance requirement cited in the FFO Report was merely an estimate and offered no explanation of how the number was derived. *Defendant's Memorandum* at 6. The arguments of defendant-intervenors' closely parallel those of defendant.

This Court finds that the remand determination of Commerce with respect to the 1985 benchmark is reasonable, is supported by substantial evidence on the record, and is otherwise in accordance with law. This Court observes that Commerce, in deriving

its 1985 benchmark, relied upon Federal Reserve data which was based on a national survey of 340 United States banks. In contrast, the FFO Report relied upon by plaintiff contains estimates and refers to compensating balances as only one of several ways that banks secure loans. In any event, the contents of the FFO Report do not contradict the substantial record evidence relied upon by Commerce. For instance, the Report indicates that *"[s]ome banks also require compensating balances or fees for providing the loan. Compensating balances range from 10% to 20%, but are often waived for prime customers; fees generally range from 0.25% to 1%, but especially creditworthy firms may receive better credit terms."* A.R.Doc. 59 at frame 813 (emphasis added). The Report also indicates that "major banks now offer top-rated customers an option of pricing their loans on the basis of prime plus a premium without compensating balances." *Id.* at frame 812.

This Court finds that the ITA gave adequate consideration to the issues raised by plaintiff in its remand determination. The ITA correctly points out that the information in the record cited by plaintiff demonstrates that compensating balances may be required for high risk customers only. *Remand Results* at 6. Furthermore, the FFO Report indicates that the costs of loans vary with the size of the loan and the creditworthiness of the borrower, and that large creditworthy borrowers could effectively bargain for loans. In short, such borrowers could secure loans below the prime rate and presumably bargain away costs such as compensating balance requirements, discounts, points, etc. Based on the foregoing, the ITA reasonably concluded that adjustments to its 1985 benchmark to include the effect of compensatory balances and additional charges or fees were not warranted.

## CONCLUSION

In accordance with this Court's remand instructions, Commerce recalculated the benefit from the dollar-denominated FO-MEX export loans granted in 1984 by comparing effective preferential rates with ef-fective benchmark interest rates applicable to this period. Commerce also determined that adjusting its 1985 benchmark to include the effects of compensating balances and additional charges or fees was not warranted because the Federal Reserve rates used to calculate the 1985 effective benchmark did not include the effects of compensating balances and other charges. For the reasons stated in this opinion, these determinations are responsive to this Court's remand instructions, are supported by substantial evidence on the record, and are in accordance with law. Consequently, plaintiff's motion seeking a new remand is denied. Defendant's cross-motion is granted. The determination of Commerce in the *Final Results*, as supplemented by prior remands, is sustained. This action is dismissed.